John B. ANDERSON, Patrick J. Lucey, Keith G. Swenson and Michael A. Rosen, Plaintiffs,

v.

George FIRESTONE, as Secretary of State of the State of Florida, and Dorothy W. Glisson, as Deputy Secretary of State for Elections, Defendants.

No. TCA 80–1020.

United States District Court, N. D. Florida, Tallahassee Division.

Oct. 10, 1980.

Patricia A. Seitz, Joseph P. Klock, Jr., Steel, Hector & Davis, Miami, Fla., for plaintiffs, John B. Anderson et al.

Stephen Nall, Gen. Counsel, Dept. of State, Frank A. Vickory, Asst. Atty. Gen., Tallahassee, Fla., for defendants, George Firestone et al.

## MEMORANDUM OPINION AND ORDER

STAFFORD, District Judge.

This cause came before the court on October 9, 1980, for a bench trial based on the parties' statement of stipulated facts, legal memoranda (Documents 4 and 10), and oral argument thereon. Jurisdiction is founded upon 28 U.S.C. § 1343(3) and plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

## STATEMENT OF STIPULATED FACTS

1. On April 24, 1980, Plaintiff, John B. Anderson, announced that he would seek the office of President of the United States as an independent candidate.

2. On or about May 20, 1980, representatives of Plaintiff, John B. Anderson, met with Defendant, Dorothy Glisson, to determine the steps Plaintiff Anderson needed to take in order to appear on the November 4, 1980 general election ballot.

3. At the time of the May 20, 1980 conference, Plaintiff Anderson had not selected a vice–presidential nominee.

4. During the conference, Defendant Glisson advised Plaintiff Anderson's representative:

(a) That to appear on the ballot, Plaintiff Anderson would need to obtain and submit petitions signed by one percent of the registered voters in Florida;

(b) That to be accepted, the petition had to conform to the forms prescribed by the Secretary of State;

(c) The prescribed form (Exhibit A attached to Document 3), requires the naming of a joint ticket, i. e., the names of both Presidential and Vice–Presidential candidates.

5. When told at this conference that Plaintiff Anderson had not yet selected a vice–presidential running mate, and, therefore, did not have a name to place on the petition for Vice–President, Defendant Glisson advised that if a vice–presidential candidate's name was not placed on the petition, the petition would not be accepted.

6. When asked what would be the effect of placing the name of a surrogate vice-presidential candidate on the petition and whether a substitution of the actual vice-presidential candidate on the ticket could later occur, Defendant Glisson told Plaintiff Anderson's representatives that the name of the vice-presidential candidate on the petitions would be the name placed on the ballot.

7. At the time of and after the preparation, execution, and submissions of the petitions for Plaintiff Anderson his agents informed Defendant and through her, Defendant Firestone, that as Anderson had not yet selected his actual vice-presidential nominee, the name of Milton Eisenhower would be included on the petition form solely as a surrogate candidate until such time as the actual selection had been made by Plaintiff Anderson.

8. Before August 15, 1980, Plaintiff Anderson met the requirements of Section 103.021(3), Florida Statutes, and filed more than the required number of petition signatures necessary to place the Plaintiff Anderson's ticket on the November 4, 1980 Florida general election ballot.

9. On or about September 2, 1980, the Department of State certified that Plaintiff Anderson and Milton Eisenhower had complied with the requirements of Section 103.-021(3), Florida Statutes, and would be placed on the November 4, 1980 Florida general election ballot.

10. However, on August 15, 1980, Milton Eisenhower had written to Robert Graham, Governor of the State of Florida, and announced his withdrawal as Plaintiff Anderson's vice-presidential running mate. This withdrawal was conditioned upon the State of Florida's legal determination that Plaintiff Anderson's actual vice-presidential nominee would appear on the general election ballot.

11. On August 25, 1980, Plaintiff Anderson announced that his actual running mate for vice-president was Plaintiff, Patrick J. Lucey, and requested that Plaintiff Lucey be placed on the general election ballot to fill the vacancy created by Milton Eisenhower.

12. Defendants Glisson and Firestone have refused to apply the vacancy provisions of Section 100.111(3), Florida Statutes, to the Plaintiff Anderson's ticket, and have refused to substitute Plaintiff Lucey for the withdrawn surrogate vice-presidential candidate, Milton Eisenhower.

The court adopts the parties' Statement of Stipulated Facts as the court's Findings of Fact in this case.

## CONCLUSIONS OF LAW

The issue before the court is whether the plaintiffs are denied equal protection of the laws by the State's failure to provide the same or similar mechanism for filling the vacancy created by the withdrawal of an independent vice-presidential nominee as is provided in Section 100.111(3), Florida Statutes, to party candidates.

Although the United States Constitution grants broad powers to the States to regulate elections, this power is subject to limitations imposed by, among others, the First and Fourteenth Amendments to the Constitution. *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Laws which impact upon the exercise of the franchise may burden two constitutionally protected rights: "the right of individuals to associate for the advancement of political beliefs and the right of qualified voters ... to cast their votes effectively." *Williams v. Rhodes, supra* at 30, 89 S.Ct. at 10.

The State has a legitimate interest in limiting the ballot to serious contenders who are truly independent and demonstrate substantial community support. *Storer v. Brown*, 415 U.S. 724, 746, 94 S.Ct. 1274, 1277, 39 L.Ed.2d 714 (1974). A state has "an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Storer v. Brown, supra* at 733, 94 S.Ct. at 1280, quoting *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972) citing *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 27 L.Ed.2d 114 (1971). It is this interest in protecting the integrity of

the ballot which the defendants herein assert as the compelling interest protected by its refusal to allow Vice–Presidential nominee Patrick Lucey's name to be substituted for that of Milton Eisenhower on the November 4, 1980, Florida general election ballot.[1]

"In determining whether or not a State law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." *Williams v. Rhodes, supra* 393 U.S. at 30, 89 S.Ct. at 10.

■ The State's representatives insist that the only way to insure the integrity of the general election ballot in Florida is through the means chosen: (1) by, in effect, requiring the independent candidate for the presidency to select and announce his or her running mate several months before the party presidential candidates have been themselves selected, much less have chosen their running mates; (2) by requiring that petitions be submitted with a specific name as vice–presidential candidate, rather than permitting an appropriate alternative designation, such as "whomsoever John B. Anderson selects" as the vice–presidential candidate; (3) by refusing to allow withdrawal of the name which petitioners recognized as only a surrogate for the independent candidate's later announced running mate and refusing to allow substitution on the ballot of the actual independent vice–presidential candidate's name.

Defendants blithely assert that such interpretation and enforcement of Florida law is not unreasonably burdensome. This court cannot agree. Even the most casual observation of the major parties' national conventions establishes that the custom and practice is to withhold selection of a vice–presidential nominee until the party's presidential candidate has been selected and has signalled his choice as running mate.

The defendants have chosen to interpret § 99.0955, Florida Statutes as requiring a specific name for vice–president be supplied on the petition form. That statute could as easily be construed to permit a designation of "whomsoever [the presidential candidate] may select" on a sufficient number of petitions as equally demonstrative of the modicum of support needed to protect the State's interest in preserving the integrity of the ballot. The failure of § 100.111 to provide for withdrawal from the ballot of the name petitioners recognized as only a surrogate for John B. Anderson's to–be–announced running mate and substitution on the ballot of the now nationally recognized independent vice–presidential running mate of independent candidate Anderson leads to the absurd result of undermining the very interest in integrity of the ballot which the State and its officials claim to seek to protect, while at the same time denying plaintiffs' equal protection of the laws. That denial is manifested by these results: Florida voters who successfully petitioned to place the Anderson ticket on the ballot will be denied the right to vote for that ticket; grave doubt is cast over the certified independent electors' ability to fulfill their legal obligation to vote in the electoral college for John B. Anderson and Patrick J. Lucey; Plaintiff Lucey, the designated running mate, is denied access to the ballot; and Plaintiff Anderson is denied the right to have his actual and designated running mate's name appear with Anderson's name on the ballot.

By refusing to protect the State's interest through means which are less burdensome to these plaintiffs, defendant State officials have created a situation which requires that provision be made for withdrawal of Milton Eisenhower's name from the November 4, 1980 general election ballot and substitution of the name of Patrick J. Lucey thereon. Only by such withdrawal and substitution

1. At the trial, counsel for defendants stated that there were no printing, fiscal or logistical considerations in the state officials' refusal to place Lucey's name on the ballot in place of Eisenhower's. The defendants' only ground for

not granting Anderson's substitution request is that their interpretation of the Florida election laws is the only means of assuring the integrity of the Florida ballot.

can the defendants avoid an impermissible infringement of the constitutionally protected rights of these plaintiffs.

In accordance with all of the above, it is ORDERED AND ADJUDGED:

1. Sections 103.111, 103.021(2) and (3), Florida Statutes, and Defendants' prior interpretation of Section 99.0955 necessitate the extension of the provisions of § 100.-111(3)(b) to independent vice–presidential candidate Patrick J. Lucey.

2. Defendants shall provide for the withdrawal of the name of Milton Eisenhower and substitution therefor of the name of Patrick J. Lucey on the November 4, 1980 Florida general election ballot as the vice–presidential running mate of independent presidential candidate John B. Anderson.

3. Let judgment be entered accordingly.